Our next case is the U.S. v. Martinez-Mendoza. Ms. Platt, we'll hear from you. Thank you, your honor. Good morning, and may it please the court, Caroline Platt on behalf of Mr. Martinez. The removal order that underlies the criminal conviction in this case is invalid, and this court can rule for Mr. Martinez under either of two theories in the alternative. First, under this court's decision in United States v. El Shami, Mr. Martinez satisfied all three elements of a section 1326D claim because the government did not show that there was an effective order to show cause and notice of time and place that ever even existed, nevermind that was properly served on Mr. Martinez in accordance with section 1252B, which is the pre-ERIRA immigration statute that applied in this case. The district court held that that was the statute that applied, and that holding was correct. Because there's insufficient proof of the service of the notice of time and place in this case, the in absentia removal order is invalid, and all three requirements of section 1326D were satisfied, and therefore, the motion to dismiss should have been granted by the district court. Actual notice, which in this case we do not think was shown, but even if it had been shown, would not be sufficient under section 1252B of Title VIII, 1994 version. Yes, ma'am. Council, can I say, because whether or not actual notice would comply with that statute, we're under 1326D, and if there was actual notice, I don't understand why any kind of procedural flaw under the service statute would actually have prevented your client from exhausting his remedies or seeking judicial review. If he had notice, he could have done those things. You're talking about notice of the time and place of hearing, Judge Harris? Any kind of notice. I mean, if he has actual notice, if he knows of, either if he knows of the hearing, or really, so long as he knows that the order comes down, I don't understand why he can't exhaust his administrative remedies with respect to that order and get judicial review if he actually has notice. And then he can argue in those proceedings, oh, you didn't quite dot all your I's and cross your T's over on the service statute, and then we can deal with it then. So I would just like to know, Your Honor, in this case, there is no actual notice of the... Right, I know, but you're making an argument that even if there were, that is exactly why I asked my question when I did. It was in response to your argument that if there were actual notice, you could still satisfy 1326D, and I don't understand that. And I don't want to use up all of my time on that, because again, I think the evidence in this case is very clear that there is no actual notice of either the time and place or of the actual... So if you just want to withdraw the argument, that's fine. No, that's fine. I don't want to withdraw the argument, because I think here's why. I think under matter, because Mr. Martinez has a due process right of service of notice in compliance with 1252B, the 1994 Pre-Arrera Immigration Statute, and that's because under matter of cuete, the remedy for that is non-discretionary. It's not a discretionary immigration relief. It's a non-discretionary termination of the removal proceeding without the entry of an order. And we think there's a due process right to a non-discretionary relief. And again, it's not cancellation of removal. It's termination of the proceeding without the entry of an order. And... Well, herte dealt with an order of show cause, and I thought it was self-evident that Mr. Martinez got actual service of the order of show cause. He signed it. Yes, that's correct. So the question is, what about the notice of hearing? So in the district court, one of the items of evidence that the district court judge relied on was the finding of fact by the immigration judge in 19-something, 97, I think, that says that Mr. Martinez provided us with his address. And he finds, as fact, a notice was sent to that address. There's been no return. And the address advisal and the notice will be received as exhibit number one. Why isn't the district court judge entitled to rely on that? So, Your Honor, this is... I'd love to pivot to that, Your Honor. If you look at page 116 of the joint appendix, that's the immigration court's checkbox, which says exactly what you just said. And if you look at pages 436 and 437 of the joint appendix, that's the actual transcript of the immigration judge's in absentia proceeding. And I think because the order to show cause, which was served on Mr. Martinez, I'd like to note, if I may, that does not distinguish this case from El Shami. In El Shami, the order to show cause was also served on Mr. El Shami in person. Right, right. What I want you to do is tell me why the district court can't rely on that as a founding effect in this case. That is what the record says, Your Honor. But that is not sufficient notice of a certified mailing of the notice of time and place. And here is why. Every single pre-ERIRA immigration case that the government has cited at any point in this proceeding, none of them have had a lack of actual proof of certified mail, as in from the U.S. Postal Service. The A file in this case does not contain a notice of time and place of hearing. There's no proof that that document ever existed. And there's no- That may not, I understand that, but that's not what the immigration judge found. Well, but the immigration judge, I would also like to note, Your Honor, in exactly what you're just referring to, if you look at page 436 of the joint appendix, which is the actual transcript, it refers to one exhibit as being two pieces of paper, which again, to me, is not clear, unequivocal, and convincing proof that the notice of time and place of hearing that actually was the corrected notice of time and place of hearing ever existed. If we were back in 1997, and you were objecting in the first instance, that might be a different case. But we're not, we're 24 years later. So we have a finding of fact by the immigration judge, and I'm not understanding why the district court can't rely on that. But Your Honor, without Mr. Martinez having been there, there was no one there to object on his behalf because it was an in absentia proceeding. That's exactly why El Shami holds what it holds, without proper proof by the government. Right, but in El Shami, wait a minute, counsel, in El Shami, the reason that the court got where it did was because the government stipulated there was no evidence. And you don't have that here. Fourth Circuit said it's uncontroverted evidence. Well, here you've got evidence that's in conflict. But Your Honor, okay, so if I may bring up a clear error case, and again, so it's the government's burden on the immigration law to show clear, unequivocal, and convincing evidence. And I think it's a question of law, what makes that standard. Counsel, but again, I think that would have been, that would have been true in 1997. But now that you're under 1326D, I thought the burden was on the petitioner, your client, to show that he didn't get sprayed. He has to prove, the burden's shifted now, hasn't it? Yes, and based on the A file that we have, which came from the government, we're working with the documents we have, Your Honor, to meet that burden. But the legal standard of who has to prove the mailing is still on the government, which is where I think we get into the legal question of what is clear, unequivocal, and convincing evidence of the mailing. In every single case the government has cited, there is actual U.S. Postal Service proof of the certified mail. Whether it's that it couldn't be delivered, whether it's there's a return, or a change of address, there's always some piece of paper from the U.S. Postal Service that proves that certified mail was at least attempted, which is exactly what's lacking in this case, in the pre-arrear cases. Well, what about the matter of Gravaldi, which has been adopted by several circuit courts, that ends up saying that proof of the actual service or receipt of the notice by the respondent is not required? So Gravaldi, I don't know how to pronounce that, Your Honor, I don't speak Spanish, but that is, as we noted in our reply brief, that case is distinguishable because there the lack of return comes because there's proof of the attempted mailing of the certified mail. It's in the U.S. Postal Service piece of paper that at least they tried to send it, which is what is lacking in the A file in this case. So that, again, is proof of the attempt to mail the thing. And here, again, I'm very concerned by the discrepancy in the immigration record about what is Exhibit 1. The order to show cause or this corrected notice of time and place, which, again, is not in the A file. There's no proof that this document with the actual time and place of hearing exists. Putting aside the immigration court's finding, you also have the testimony from Agent Lamb, who's asked, is it your belief that the defendant told you he had an immigration hearing pending? The answer is yes. There's an objection. The objection is overruled. There's no assignment. Just hang on, counsel. I haven't finished my question. So there's no assignment of error to that as an evidentiary error in this case. So why isn't that also an additional factual evidence the district court could rely on for either actual or de facto notice of the hearing? That is not what Agent Lamb's testimony was, Your Honor. As we lay out in our reply brief, Agent Lamb testified clearly that he had no memory of what happened on that date. And he also said that he was certain that he had gotten the evidence. I just read you, counsel, I just read you what he testified to. And there could be different ways to take that testimony. But the district court was entitled to analyze it along with the other evidence. Agent Lamb testified that he was certain he got the notice, the information about the hearing from a records check and that it was possible that Martinez had told him that. But he thought it was more likely that he had gotten it from a records check. In addition, the outcome, if we want to get to the voluntary return issue, the outcome of that. Oh, no, I'm sorry. Just before we move off, before we move off notice, I did, tell me, I'm still, I'm having trouble with 1326D. I actually, I understand your notice argument. I don't understand your 1326D argument. If I assume hypothetically, it's 100% obvious there was never any notice of this hearing. And that would make the hearing itself, I'll assume also, the hearing itself, which he didn't have notice of and couldn't attend, that was a violation of due process. But to excuse the first two prongs of 1326D, you have to show that that due process flaw, because he didn't have notice of the hearing, that's what caused him not to challenge the deportation order administratively or judicially. It precluded judicial review. And I'm not understanding that. If he got notice of the order, forget the hearing, but he got the order, and he had been told in the notice to show cause, if there's an order and there's a problem with it, you can administratively exhaust and you can appeal it, then how would any due process violation relating to the hearing have prevented exhaustion or judicial review? Do you see what I'm saying? I do see what you're saying, Your Honor. And I have two answers to that question. And I'm not sure either of them will satisfy you, but they're the legal answer. And the first one is that, that does not distinguish this case from El Shami. Well, I know what you, I understand your point that he got the notice, but the court actually says in El Shami that not because he didn't attend the hearing, he was deprived of his notice of the right to challenge or appeal the order. That's not true here. But El Shami as well was served with the actual order to show cause. Well, I know, and I can't really explain that, but I don't know how I could say because he didn't know about the hearing, he also was deprived of his chance to exhaust or appeal the order. So my answer to that, which is separate, is that there are, this is related to the voluntary return issue, is that there are rules about when you can file a motion to reopen that are not time bars, that are also, there's also something called a departure bar. I think it's eight, I don't wanna get too far into civil immigration law because that's, as you, I think you all know, not my area of expertise as an assistant federal public defender, but there's something eight CFR 8.1, which is the pre-arrear law, I'm not promising you that's the current law, that was a departure bar as well, that you could only file motions to reopen in certain. Okay, so this is sort of where I was, this is where I left off on your argument. So your notice argument maybe isn't an independent argument. Maybe you need the voluntary return to get you through 1326D. If you wanna depart from the four corners of Al-Shami. And the other part, Your Honor, is that under Huete, this is related to my due process answer from before, under Huete, he has a due process interest in the termination of the proceeding just based on the notice, because it's a non-discretionary remedy that Huete grants. But they could reopen the hearing, right? They would have to terminate this one. That doesn't mean he can, that's it, he's good for forever. I wanna say this carefully. My understanding of Huete is that termination is a termination. They couldn't reopen it. They could file a different proceeding, but this proceeding will terminate. And then he could still be removed. But if you look at the language, but that's a different proceeding, Your Honor. And if you look at the language, and this gets me back to the statutory language of 1326D, it talks about this order. And so if we're challenging the fundamental fairness of this deportation order, whatever other proceedings or whatever other thing might happen to him with INS or now ICE in the future, we're challenging this removal order. And so I don't have to prove that he could never be deported by ICE under any circumstances in the future. No, but you'd have to show prejudice under 1326D, which usually entails some sort of a showing that but for these procedural errors, he could not actually be removed. And that's why the termination holding a cuete is so important, again, under pre-ARRERA immigration law, because termination of the proceeding is different than just saying like a discretionary cancellation or something. It's an actual termination of these charging documents. Counsel, if you want to talk about voluntary return, you probably ought to move on to it. I really do, Your Honor, because clear error findings, in fact, I understand that they're rare. I'd really like to draw the court's attention to a clear error case called United States versus Span, which is 789 Fed Third 320, which I see that my opening time has expired. Yeah, go ahead and quickly finish your answer. Thank you. So there's a case called United States versus Span that has to do with clear error findings of fact, where the underlying documents are unclear, where they've been edited and there are crossed out handwritten notes. It's an ACCA case about prior judgments, but it's really remarkably on point. And I can probably get into this in rebuttal as well, if the court will indulge me in having a rebuttal about something we haven't yet gotten to, but 789 Fed Third 320, but this court found a clear error finding of fact in a case with underlying documents that are so unclear that the clear weight of the evidence considered as a whole did not allow the district court to find the fact that it found in that case, which I think is incredibly on point with regard to the district court's finding of fact in this case that the disposition on the I-213, where it said that Mr. Martinez was voluntary returned to Mexico in INS custody, didn't happen. I think it's very clear in this case that that did happen and I'm happy to get into that more in rebuttal, but here, that is a clear error finding of fact that I think this court should reverse. And that would be, again, both if the court wants to tie it into the first due process argument, but also as its own separate due process violation that would entitle Mr. Martinez to reversal. All right, you've got some time on rebuttal, Mr. Young. Thank you, your honors. Good morning, your honors. May it please the court. There are two straightforward ways to resolve this case. First, the government agrees the defendant has a clear statutory right to move to reopen his immigration proceedings at any time for lack of notice, but he was informed of that right when it was read aloud to him in Spanish when he was personally served with the order to show cause in this case. And he's never exercised that right. And for that reason, he hasn't exhausted his administrative remedies under 1326 D1. Second, the defendant's fundamental unfairness claim, as I understand it, is that the lack of a return receipt in the file would result in automatic termination of the removal proceedings. And that assertion is wrong. And it's wrong for several reasons. First, the applicable due process right is a right not to be removed in absentia without notice. It's not a right to enforce certified mailing rules. And here, unlike in El Shami, the defendant has not offered any affirmative evidence at all that he actually lacked notice, which is another reason to affirm. Let me start with the government's lead argument here, which is failure to exhaust administrative remedies. At least two circuit courts have reasoned in exactly the way that the government is asking the court to reason with respect to the order to show cause. There's a case called Orita Campos from the Seventh Circuit, which is cited on our brief at pages 26 and 30, which reasons in exactly this way. And the Ninth Circuit, in a case called Ina Jose Perez, which is cited in our Rule 28J response, reasoned in exactly this way. In a lack of notice case, where the defendant is personally served with an order to show cause that advises him of his right to reopen at any time, the expectation is that he has to exhaust that remedy. And importantly, and this is another point that we make in our 28J response, because there's no time bar, my understanding is that it is not unusual for immigrants who were removed in proceedings that started before ERIRA took effect to much later, a decade later, 15 years later, file a motion to reopen. The statutory provision is 1252 lowercase b c 3b. And we cite Ramos Portillo in our Rule 28J response, which is a Fifth Circuit case from 2011. We also set a case called Sanchez from the Sixth Circuit in 2010, on our brief at pages 26 and 30. And those are cases where the immigrant comes forward years after his pre-ERIRA proceedings have closed, and he files one of these motions, and he says, I never got notice. And then that's adjudicated by the immigration judge and the BIA, and if the defendant feels there's an error, and there's a denial of a motion to reopen, he can take an affirmative appeal to a court of appeals, which is exactly what this defendant could have done. This, I think, is a helpful segue to my friend's points about Alshami, because I have the exact same question. Alshami is a pre-ERIRA case, and I could not figure out why Alshami does not quote the order to show cause at all. The government's brief in that case is not available on PACER, but it is available on Westlaw. And I think the answer is that the government did not squarely present the argument. There's one substantive paragraph in the Alshami brief at pages 15 through 16 that mentions the order to show cause in passing. It doesn't quote it at all. And the government's lead argument in that case, as I understand it, was the defendant could have taken an appeal, which I think gets the sequencing wrong. In a lack of notice case, the sequence is, you file a motion to reopen with the immigration court. If that's denied, you then take an appeal from the denial of that motion, which is why this defendant also can't satisfy 1326 D2. All of this was available to him, and he never did it, despite the fact that he was removed both in 2005 and in 2010 before this 1326 prosecution was initiated. Let's talk a little bit about fundamental unfairness, because I think a couple of different things are being conflated. One of the things that seems clear to me as I was preparing the case is that there are two distinct due process rights that I think it's helpful to separate. There are cases where an immigrant comes forward in a direct appeal from a removal order, and he lodges a due process challenge to the manner of notice. And we cite two of those cases in our Rule 28J response, Hoppe from the Ninth Circuit and Aneen from the Eleventh Circuit. And in those kinds of cases, what the courts of appeals have said is, you don't have a due process right to any particular form of notice. You have a due process right to notice reasonably calculated to reach you, and I haven't seen a single case from a court of appeals or the BIA that says any kind of mail, whether regular mail or certified mail, isn't intended to reach the person with some degree of reasonableness. There's a separate due process right not to be removed in absentia without actual notice. That's what El Shami talks about. We agree completely. The defendant absolutely has a due process right not to be removed without actual notice. But the problem in this case is the defendant has never made any affirmative showing on that score at all. And on this point, three things are working in tandem with each other, and I think it's helpful to separate them out. So first, I respectfully disagree with my colleague, Ms. Platt, about fact findings. In the district court's opinion at JA 190, he says that the defendant here told immigration officials during his encounter with them in Galveston that he had an upcoming hearing date. So that's a fact finding. There's then a second hearing, and at the very end of that hearing, he says, nothing I have heard today, this is Judge Hudson, causes me to question the legal or factual conclusions I've previously made. So even after hearing from former INS agent Ray Lamb, the district court judge adhered to his fact finding that the defendant must have had actual notice because he's the one who told immigration officials that he had an upcoming hearing during the Galveston encounter. That's the first thing about notice. The second thing is, set that aside. Just assume for the sake of argument that the court felt that that was clear error, which I don't concede that it is, but let's assume that. When there's a certified mailing, but there's a failure to obtain a return receipt, the certified mailing just becomes a regular mailing. And under this court's 2006 decision in Nibagware, there is a presumption of receipts that attaches to regular mail. Now the difference is, under the BIA's decision in Grijalva, if it's certified mail with a return receipt, there's a really strong presumption. And the BIA has said the defendant cannot rebut that presumption on his say so. The defendant can't file an affidavit that says I never got notice and reopen his hearings. But what this court said in Nibagware is the presumption of receipt from regular mail is actually pretty easy to overcome. You say that you didn't get notice and then you point to whatever other kinds of circumstantial evidence you can. But the point is, that presumption ought to apply here and it's never been rebutted. The defendant has never come forward in any way, shape, or form and said, I didn't have notice. And that leads to my third point, which is kind of like a practical point about what would happen in reality. Imagine this defendant were to file a motion to reopen his immigration proceedings and he were to say, under the provision that says he can move to reopen at any time for lack of actual notice. He would say, there's no certified receipt in my file. And the immigration judge, I think, would say, okay, did you get notice? And if he said, I declined to answer, there's no way those proceedings would be reopened. That's why this case is totally different from El Shami. I mean, El Shami, Judge Agee was exactly right about this. It says expressly at page 663 that the court finds that El Shami did not have notice. And the reason it finds that is because El Shami and his wife both testified in the 13-2016 proceedings. This defendant didn't. So even setting aside the district court's factual finding at JA-190, you're under the Nevaguare presumption and there's nothing to rebut it at all. There's a total absence of evidence. So in those circumstances, I agree, Judge Agee, with your point. The immigration judge here made a finding in his removal decision at JA-116 that a certified mailing had gone out into the mail. It's just that there was no return receipt. And there's no independent right to quash immigration proceedings for lack of a return receipt, which leads to huete. And I'm happy to address that, but Judge Harris, I think you may have a question. I do. I guess I wanted to ask you to put to work. I totally understand your argument about notice of the hearing. But if he didn't get notice of the deportation order itself, if he didn't get notice of the order because he had been voluntarily returned to Mexico and that was fundamentally unfair, then that would excuse the failure to exhaust and to seek judicial review, because he didn't know there was an order. I think it might. And let me explain the doctrinal framework, because it's a very weird factual scenario. And then I want to talk about clear error. If the defendant was voluntarily returned, it was done illegally. Both of the immigration officials testified to that. And they're exactly right about the relevant regulations. I could provide them if it would be helpful. You can't allow someone to voluntarily return after immigration proceedings have started in immigration court. So then the question becomes, and then apparently the immigration judge would have entered a removal order, either having been told that and not caring or not knowing that. And so the question is, what do you do with that? And I think, so there's a case that was argued at the Supreme Court like two weeks ago called Palomar-Santiago, which is going to be the first criminal 1326 case to come down since Mendoza-Lopez. The Solicitor General in their brief takes a pretty aggressive stance that it's very rare to be able to excuse D-1 and D-2. But, they say, you might import some of the exhaustion doctrine that exists, for example, around the PLRA, like in Blake. And one of the examples that the Supreme Court has given for why you might excuse failure to exhaust is if the government has affirmatively misled you. And assuming everything you said, Judge Harris, you might apply that here. Because I think what would have happened is this man would have been put on a bus, driven seven hours from Houston to the border, and told, you're good to go. And he would have reasonably been. Right, because the form said he waived hearing. So he doesn't think there's going to be a hearing. He's good to go. Now, let me add one curly Q, and then let me talk about clear error. The curly Q is, I think you might do that if this 1326 prosecution were like his first interaction with the immigration system since his voluntary return. But he was removed again in 2005, and again in 2010. And in 2009, he checked another form that said he did not want to contest removability. So I'm not actually even sure you'd excuse D1 and D2, even in the really weird voluntary return scenario in this case. Because what would have happened? In 2005, he would have been told, there's a pending order of removal. We have to take you back to Mexico. And he would have said, no, that was all cleared up. Yeah, I get that as a matter of common sense. I totally do. Like now, the failure to exhaust is not caused by what happened back in 1997. It's caused by his voluntary decision to give it up. But I couldn't find any cases saying that. Can you? No, I haven't. And I think part of the reason, it gets into this really weird distinction between a defendant's burden under 1326D and collateral estoppel. What sometimes happens is people start going, but there's no collateral estoppel in criminal proceedings. And that's, of course, totally right. And the assistant federal public defender said that below here. But I don't really think it's a collateral estoppel issue. I think there's an intervening cause, which is in 2005, you were told again that there was a removal order, and you ought to have acted then. Let me talk about clear error, Judge Harris, as I said I would. Under Bessemer City, clear error exists if the court is left with a firm conviction that a mistake has been made. And if a district court judge. Counsel, are you moving to, even though opposing counsel only got to touch on voluntary removal, I assume she's going to want to discuss that in rebuttal. So you're going to talk about that as part of this discussion? Yes, Your Honor. I want to talk about voluntary removal and fuete before I sit down. So let's do voluntary removal. Under Bessemer City, if the district court judge adjudicates between two plausible explanations, that's not clear error. There are at least three independent reasons why Judge Hudson concluded that this individual was not voluntarily removed. One, both the immigration officers testified that it would be flatly illegal and contrary to regulations, which is right. Two, they both testified that there would be at least three documents in the immigration file attesting to the fact of voluntary removal, the change in bond status, and the transportation seven hours away from Houston. And none of them appear in the file. OK, counsel, can I stop you on that one? Because I did think the district court relied on that heavily. And I have to say, and I do not mean this in an even remotely snide or judgmental way, but we're starting from the premise in this case, that the paperwork is not in order. One way or another, the paperwork didn't get done right, because either some documents are missing, or somebody put VR on the form by mistake. So do you hear what I'm saying? How much can we rely? Like, we can't, under no scenario is the paperwork proper in this case. So how much weight can we put on which way it's improper? I have two answers, Judge Harris. The first is, I totally get your point, truly. But it's one thing to have a confusing form about the Galveston interaction in the file. And it's another thing for three separate documents to be missing. If it were just one, I think the case might be much harder for me. But here it's three. And so I think that that matters. And then the last thing, I said there were three points. Former INS Agent Lamb testified that there was a local policy in Houston that they never VR'd somebody with a criminal history. And this defendant had a criminal history, had been convicted of forgery, and given 120 day sentence. So that's three independent reasons. Let me say this, Judge Harris. So what about Agent Lamb's testimony that putting VR on the form was just a mistake I made? Yes. I would have thought that would have been pretty powerful testimony on behalf of the government. Absolutely. I should have added that as a fourth reason, Judge Agee. You're exactly right. When he was put to the question, he said it seems clear to me in retrospect that this was a mistake. Let me offer, sort of step outside the transcript of the hearings. The federal public defender did a very good job below of pointing out that the Galveston form seems to have been written around 4.30. And then there's a separate waiver form at 5 o'clock where he says, put me on a bus. I want to waive my hearing. I think one interpretation of what happened is that for at least half an hour on that day, they thought they were going to VR him. And then somebody realized exactly what Agent Lamb and Officer Chin testified to, which is, wait, we can't VR him. And he wasn't. That seems to me to be the most plausible reading of this record. Before I sit down, I really want to address Hueyta. Because another distinction between this case and El Shami is the prejudice argument in El Shami was, if I had been advised of my right to seek discretionary cancellation, I would have done it. There's no claim like that here. The only prejudice claim is what Ms. Platt has said, which is under Hueyta, a service defect terminates the proceedings. That is wrong. And it's clear when you read Hueyta it's wrong. Hueyta relates only to orders to show cause. And the reason Hueyta comes out the way it does is because there are two regulations that relate only to orders to show cause. The first regulation says, you can accomplish service of an order to show cause by regular service or personal service. But if the defendant doesn't show up for his hearing, it has to be personal service. And then there's a separate regulation that says personal service includes all of the following. And the last one is certified mail return receipt. And what the BIA says is, it doesn't make any sense to say that certified mail return receipt is a species of personal service unless the receipt says that it was put in the hand of the immigrant or in the hand of a responsible person at the household. All of that is only about orders to show cause, all of it. And we cite cases in our brief like Delicia Pena Paulino and even Grohova, which just say flatly that Hueyta right does not apply to notices of hearing, full stop. So where I think back where I was at the beginning, which is what would happen is this defendant would file a motion to reopen. The immigration judge would say, OK, return receipt. Did you have notice? And then the defendant would have to say something in a way that he didn't in the district court. And because there's no evidence on the other side showing that he didn't get actual notice, these proceedings were not fundamentally unfair, which is a reason to affirm a part and in addition to the fair to exhaust administrative remedies. If the court has no further questions, the government will rest on its feet. All right, thank you, Mr. Young. Ms. Platt, you've got some rebuttal time. Thank you, your honors. I don't want to, I would like to suspend my time talking about voluntary return. But with regard to Hueyta, I would just like to note that we've distinguished Curhalva in our reply brief. And the statutory requirements for the notice of corrected time and place pre-arrera are not different than the order to show cause. The statute is exactly the same, 1252B. With regard to voluntary return, as I said, the standard for clear error from this court has been met. If I could note, my friend on the other side has said that Agent Lamb clearly testified that it was actually illegal pre-arrera to voluntary return someone who had a prior conviction. That is not what Agent Lamb testified. If you look at page 294 and 295 of the transcript, what he says is, quote, at the very least, it was the local policy. I don't know if it went higher than that or not. I don't know. That's the testimony in the record. His second argument, my friend on the other side, had to do with the documents in the record and how they were inconsistent with a voluntary return. The actual documents in the record are an I-213 form, the disposition of which said voluntary returns to Mexico. Agent Lamb testified that the other documents he would expect to see in the file include an I-826 form, which is the notice of rights, which is, in fact, in the record at JA-326. The agent, or Officer Chin said he would expect to see the bus manifest with the list of passengers, but Officer Chin also clearly testified that was not required to be in every person's A-file. So that document is not, in fact, missing from the A-file, even to take into account what Judge Harris said about the fact that this file is apparently sort of a mess either way. It was also disclosed to defense counsel in pieces. There are other documents, if I may say. There's other evidence that supports the VR having happened in this case. The form was distributed to D, D, and P in Agent Lamb's handwriting. He wrote in that it should go to them, which is the people who are actually tasked with sending people to Mexico on a bus. In addition, Mr. Martinez tried to enter the United States in August of 1997 and was turned back at the border. That's a document in his A-file. We also have, and this goes, I think, Judge Harris, also to your question about whether he got the notice of the actual in absentia order. Judge Hudson found, as a matter of fact, that my client was in Mexico in late April through May and June of 1997 because of his wife's testimony. That is a finding of fact at JA 322 and 23 that it was made and shows that Mr. Martinez was in Mexico. That also means he did not receive mail in Houston in May. He never received the in absentia removal order. So that- It may mean, I know that's a conclusion that you reach, but it's not necessarily the only conclusion. He could have very well received mail at the address he gave to the immigration agency, and he could have been in Mexico. And, I mean, you can watch television any night and see thousands of people coming back and forth all the time. But your argument strikes me as one that's a very good one at the district court level. But here you've got other evidence in the record. For instance, you have Agent Lamb's testimony when he's asked with regard to the VR line would you have normally scratched that out? Answer, yes, sir. You just didn't do it in that case. Correct. Is that line disposition VR to Mexico indicative that he was in fact voluntarily removed? No, sir. So wasn't the district court allowed when it considers all of this evidence  which it thinks is dispositive? In this case, your honor, I submit that the finding that Mr. Martinez was not voluntarily returned was clear error under this court's standard. Well, I know you do, but it seems like you can only reach that if you ignore the other evidence in the record. The weight of the evidence in this case is clear that Mr. Martinez was voluntarily returned to Mexico. The only evidence that it didn't happen was because the government doesn't want it to have happened because it helps him in this case. And, again, Agent Lamb was clear that he does not remember what happened on that day. There was no- I just read you his testimony. He was speculating, your honor. And any evidence that Mr. Martinez was voluntarily traveling back and forth multiple times in April and June was also speculative. I know that's your take on the evidence, but that's not what the questions say. It says you just didn't do that in this case. Correct. Agent Lamb said he had no memory of that date. So any speculation that he made about what he did or did not do on that date was also speculative. And so, again, we would submit that the great weight of the evidence in this case is that Mr. Martinez was voluntarily returned, and that makes an essential hearing and entry of the order also fundamentally unfair for the reasons that we've laid out in our brief. This is the rare, clearly erroneous finding of fact by a district court. And, again, we'd ask the court to look at the United States versus Spain and see that it's very, very similar. I know that my time has expired. I would just also like to note that, in fact, collateral estoppel does not operate against a criminal defendant. So the fact that Mr. Martinez's prior counsel has not raised this objection to the previously reinstated, there's only one removal order that's ever applied to Mr. Martinez. It's been reinstated. Collateral estoppel does not operate against a criminal defendant. And so, for all of the reasons that we've argued in our briefs, Mr. Martinez would like the court to reverse the district court's denial of the motion to dismiss on Genova review. All right, Judge Harris, Judge Rush, and either of you have any further questions? Hearing none, thank you, counsel. As you know, our normal practice would be to come down and say hello. We can't do that now, but we hope to be back to normal in the fall and hope you'll return then and we'll be able to do that in person. Until then, stay safe, have a good summer, and I'll now ask the clerk to adjourn court. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: G. Steven Agee, Pamela A. Harris, Allison J. Rushing